UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
         *Plaintiff-Appellee,*

v.                                          No. 02-4180

GEORGE LEE LEWIS,
         *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of North Carolina, at Elizabeth City.
Terrence W. Boyle, Chief District Judge.
(CR-00-20-BO)

Submitted: November 7, 2002

Decided: January 31, 2003

Before WILKINS, LUTTIG, and WILLIAMS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

Paul K. Sun, Jr., ELLIS & WINTERS, L.L.P., Raleigh, North Carolina, for Appellant. Frank D. Whitney, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

A federal grand jury indicted George Lee Lewis on one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g) (2000). Lewis filed an unsuccessful motion to suppress two firearms seized from his Jeep and his incriminating statements to police. He then entered a conditional guilty plea, reserving the right to appeal the denial of his suppression motion. Characterizing Lewis as an armed career criminal, the district court sentenced Lewis to 120 months in prison. Lewis timely appealed, challenging the denial of the suppression motion and his sentence. Finding no merit to his claims, we affirm.

Around 9:30 p.m. on November 17, 1999, William Ashburn noticed a car on his farm in Pasquotank County, North Carolina, saw a flash, and heard a rifle shot.* He got in his car and followed the vehicle, reporting the incident to a police dispatcher from his cell phone. As the vehicle attempted to turn around in a driveway in Camden County, North Carolina, Camden County Sheriff's Deputy Terrence Sutton arrived on the scene. Ashburn exited his own car and pointed at the vehicle, a Jeep driven by George Lee Lewis, as the vehicle that he had reported. As he approached the Jeep, Lewis got out and walked toward him, and grabbed the deputy's arm, saying that he wanted to talk to him. The deputy shined his flashlight in the Jeep to look for weapons and saw a rifle on the back seat. Sutton then handcuffed Lewis and placed him in the patrol car while he spoke with Ashburn.

Sutton returned to the patrol car and advised Lewis that Ashburn wanted to press charges. Lewis asked how he could help himself and the deputy replied, "If you didn't do anything wrong, cooperate with us, that's all you have to do." Lewis told the officer that he had been "wrong," and had entered Ashburn's property, spotted a deer, and

---

*Fire lighting (illegally hunting deer after dark using artificial light), N.C Gen. Stat. Ann. § 113-294(e) (2001), and trespassing, N.C. Gen. Stat. Ann. § 114-159.13 (2001), are both misdemeanors under North Carolina law.

fired his gun. Meanwhile, Pasquotank County Sheriff's Deputy David Meiggs arrived on the scene. After consulting with Meiggs, who knew Ashburn and had responded to similar complaints on his farm before, Sutton told Lewis he was under arrest for trespass. Meiggs approached the Jeep and saw the rifle on the backseat. He then searched the car and found a .22 caliber Ruger pistol under the driver's seat.

The district court held that the warrantless seizure of the rifle was justified under the plain view doctrine. Under this doctrine, the warrantless seizure of incriminating evidence is authorized where "(1) the officer is lawfully in a place from which the object may be plainly viewed; (2) the officer has a lawful right of access to the object itself; and (3) the object's incriminating character is immediately apparent." *United States v. Jackson*, 131 F.3d 1105, 1109 (4th Cir. 1997). Lewis does not dispute that there was reasonable suspicion to stop his vehicle. Thus, the deputies were lawfully in a place from where the rifle could be plainly viewed. Furthermore, they had a lawful right of access to the rifle. *See Texas v. Brown*, 460 U.S. 730, 741 n.6 (1983) (officer who sees incriminating object inside vehicle may seize the object). Finally, we find that the incriminating character of the rifle was immediately apparent, in light of the fact that Ashburn had identified the car in which the rifle was discovered as the one he had seen leaving his property after he had witnessed the illegal firing of the gun on his property.

The district court also concluded that the warrantless seizure of the pistol was authorized as incident to a lawful arrest. Lewis argues that there was no probable cause for his arrest and hence, the seizure of the pistol could not be justified as incident to a lawful arrest.

"Probable cause exists 'where the facts and circumstances within . . . [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949) (internal citation omitted). In this case, Ashburn witnessed two misdemeanors committed on his property. He followed the vehicle off his property and continued to track it until police arrived. He identified Lewis' Jeep as the vehicle he had been following. The rifle in plain

view in the back seat of the Jeep provided further corroboration that Lewis was the individual who had been on Ashburn's property. Under these circumstances, we find that the district court properly concluded that probable cause existed to arrest Lewis.

Lewis argues that the search was not incident to his arrest because he was not in the Jeep at the time of his arrest and the seizure and arrest were not contemporaneous. We find that the delay between Lewis' arrest and the search of his Jeep was sufficiently brief to support the district court's conclusion that the search was incident to Lewis' lawful arrest. *United States v. Johnson*, 114 F.3d 435, 440-41 (4th Cir. 1997).

Next, Lewis contends that the district court should have granted his motion to suppress the incriminating statements he made to Sutton because he was interrogated in violation of his rights under *Miranda v. Arizona*, 384 U.S. 436, 478 (1966), to remain silent until he met with counsel. *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). Volunteered statements of any kind, however, are not considered a product of interrogation and therefore are not barred by the Fifth Amendment. *Innis*, 446 U.S. at 300.

We find that Lewis' statements were voluntary. Immediately after leaving his vehicle, Lewis tried to explain to Deputy Sutton what happened. The officer initially would not listen because he was more interested in securing the area. After handcuffing Lewis and placing him in the back of the patrol car, Sutton further delayed speaking with Lewis in order to first talk to Ashburn. When he returned to the patrol car and told Lewis that Ashburn wanted to press charges, Lewis asked what he could do to help himself. Sutton advised Lewis that if he had not done anything improper, he could cooperate with police. Without being questioned, Lewis then made incriminating statements, admitting that he had indeed done something "wrong." Under these circumstances, we find that Lewis' statements were voluntary and that the district court did not err by denying Lewis' motion to suppress.

Finally, Lewis contends that the district court erred in sentencing him as an armed career criminal pursuant to 18 U.S.C. § 924(e) (2000). Specifically, he argues that, under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), he should not have been sentenced as an armed

career criminal because the fact of his prior convictions was not alleged in his indictment. However, as Lewis concedes, *Apprendi* did not overrule the Supreme Court's decision in *Almendarez-Torres v. United States*, 523 U.S. 224, 235 (1998), that prior felony convictions that trigger enhanced sentences are sentencing enhancements rather than elements of the offense. *United States v. Sterling*, 283 F.3d 216, 219-20 (4th Cir.), *cert. denied*, 122 S. Ct. 2606 (2002). Thus, Lewis' prior felony convictions could be used to enhance his sentence even though they were not charged in the indictment.

For these reasons, we affirm Lewis' conviction and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*